IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

## <u>FIRST AMENDED COMPLAINT</u>

| | |
|---|---|
| THIAGARAJAN PONNOUSSAMY<br>4202 Pinefield Ct<br>Fairfax VA 22033<br><br>                              Plaintiff<br><br>            – against –<br><br><br>THE INTERNATIONAL BANK FOR<br>RECONSTRUCTION AND DEVELOPMENT<br>1818 H Street NW<br>Washington DC, 20433<br>                              Defendant | CASE NO 1: 25-cv-04225-TNM<br><br><br>Jury Trial: YES |

## COMPLAINT

I.      INTRODUCTION ................................................................................................ 1

II.     JURISDICTION AND VENUE ........................................................................... 2

III.    PARTIES ............................................................................................................. 3

IV.     STATEMENT OF THE FACTS .......................................................................... 4

        A.      Prior WBAT Decisions – WBAT Cannot Adjudicate General Breach of the IFI Act .......... 4

        B.      Nov 2022: Congressional Guidance on IFI Act Violations ................................ 4

        C.      Mar 2023 to Till Date: Failure to Appoint Reviewer / Breach of IFI Act § 1504(7).......... 5

        D.      June 2023: Whistleblower Report on Breach of International Laws ............................. 5

        E.      Oct 2023: Failure of HR Leadership to Respond to Request For Suitable Reviewer ....... 6

        F.      Punitive Damages for Willful, Reckless and Malicious Discard of the IFI Act................ 6

        G.      Dec 4, 2023: Whistleblower Disclosure to Board and Loss of Key Evidence ................ 7

        H.      Dec 11, 2023: False Assurances to the Board — Tort Under FSIA................................. 7

        I.      Jan 2024: Ethics Unit's Failure to Recognize HR's Misconduct Breaches IFI Act ............ 8

        J.      Disclosure of Whistleblower Identity Breaches Section 806 of SOX Act ...................... 8

        K.      Misuse of Fitness-for-Duty Assessment Violates Sec 806 of SOX Act ........................... 9

        L.      Feb 28, 2024: VP of Budget's Directive to Seek External Judicial Relief...................... 10

        M.      Mar 13, 2024: Unlawful Gag Order in OTI Violates Sec 806 of SOX Act ...................... 10

        N.      Mar 2024: SVP of Legal's Misrepresentation About Protected Disclosures................ 11

        O.      April 2024: Ethics Unit's Failed to Investigate Code of Conduct Violation................ 12

        P.      April 2024: Ethics Unit's Improper Deferral to Performance Review Process ............ 12

        Q.      April 2024: Conflict of Interest in OTI Liaison Appointment.......................................... 13

        R.      May to Dec 2024: OTI Meetings Failed to Address Request for Reviewer................ 13

        S.      Oct 2024: Improper Use of PMR to Introduce Unsubstantiated Allegations .............. 14

        T.      Dec 2024: Misclassification of Retaliation Complaint as Re-Litigation ...................... 14

        U.      Mar 25: HR Attempt to Silence Whistleblowing Through OTI Removal Conditions ..... 15

V.      May 12, 2025: 14 Day Termination Notice for Protected Disclosure ........................... 16

W.      May 12, 2025: Punitive and Retaliatory Misuse of Fitness-for-Duty Process .............. 16

X.      May 26, 2025: Plaintiff's Response and Protection Under IFI Act §1505(11) .............. 18

Y.      June 2025: False Assertions to U.S. Executive Director's Office — Tort Under FSIA .... 18

Z.      June 9, 2025: Termination Memorandum Based on Nonexistent Documentation ...... 19

AA.     May 12, 2025 Vs June 9, 2025: Contradictory Performance Statements .................... 19

BB.     June 12, 2025 & June 19, 2025: Failure to Produce Alleged Performance Records ..... 20

CC.     June 24, 2025: VP of HR Failed to Respond Request to Rescind Termination ............. 21

DD.     June to Oct 2025: Misrepresentation About Re-litigation in WBAT ........................... 21

EE.     June to Oct 2025: Misrepresentation of WBAT Time Limits ......................... 22

FF.     Oct 16, 2025: Freezing Funds by US Congress for IFI Act Non-Compliance ................ 23

GG.     Oct 29, 2025: IBRD Claims IFI Act Is Irrelevant — Governance Breakdown ................ 24

HH.     Staff Association Counselor: Precedent by WBAT on Wrongful Termination .............. 25

V.      ADDENDUM STATEMENT OF FACTS .................................................. 26

II.     Ethics Failure to Investigate Questionable Accounting Practice of Internal Auditors .. 26

JJ.     July 2015 to June 2016: Plaintiff Helped IBRD Avoid $60m of Accounting Error .......... 26

KK.     Post June 2023: Non-Compliance - Bretton Woods Agreement Act & SEC Rules ......... 27

LL.     Oct 25, 2024: Ethics Unaddressed Complaint on Questionable Accounting Practice... 28

MM.     Nov 2023: Budget Director Refusal of Accounting Complaint Violates SOX Act ........... 29

NN.     Jan 2024: Failure to Amend WBAT Decision 586 Violates SOX § 302 Obligations ........ 29

OO.     Mar 2024: Correspondence with SVP of Legal about breach of SEC Regulations ......... 30

PP.     December 2024: Ethics Threat of Disciplinary Actions Constitutes Retaliation ........... 31

QQ.     Dec 2025: Retaliation WBAT Application and Denial — Violates IFI Act § 1504(7) ...... 32

RR.     Dec 2025: WBAT Application and Denial — Violates IFI Act § 1505(11) ..................... 33

SS.     2014 to 2024:  Ethics Unit Non-Investigation of Misconduct Exceeds $1 Billion .......... 33

TT.     Summary of Retaliation, Harm, and Need for Punitive Deterrence .............................. 35

VI.     CLAIMS FOR RELIEF (COUNTS) .......................................................... 36

VII.    PRAYER FOR RELIEF ................................................................. 40

## Cases

*Halliburton, Inc. v. Admin. Review Bd.*, No. 13-60323, 2014 WL 5861790 ....................................................9

Jam v. International Finance Corp., 139 S. Ct. 759 (2019) ...........................................................................2

*Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368 (Fed. Cir. 1999) ......................................21

## Statutes

28 U.S.C. § 1391(e)(1) ................................................................................................................................3

Bretton Woods Agreements Act (BWA Act), 22 U.S.C. § 286 ...................................................................28

Department of Defense and Full-Year Continuing Appropriations Act, 2011 Public Law 112–10 ............23

Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. §§ 1602–1611 ....................................................passim

International Financial Institutions Act (IFI Act), 22 U.S.C. § 262o-3–262o-4 and 262r–4.................passim

International Organizations Immunities Act (IOIA), 22 U.S.C. § 288 ..........................................................2

Sarbanes-Oxley Act (SOX) Act 18 U.S.C. § 1514A....................................................................................9, 39

## International Treaties

Convention on the Privileges and Immunities of the Specialized Agencies ..................................................5

## Constitutional Provisions

U.S. Const. amend. I...................................................................................................................................2

U.S. Const. amend. V.......................................................................................................................2, 19, 20, 21

U.S. Const. amend. VIII................................................................................................................................2

# I.   INTRODUCTION

1.          This civil action arises from the International Bank for Reconstruction and Development's (IBRD) systematic violations of the International Financial Institutions Act (the IFI Act). These violations include IBRD's failure to maintain an independent and effective investigative mechanism, refusal to investigate credible allegations of misconduct, and denial of a fair, timely, and impartial adjudication of Plaintiff's retaliation complaint(s). Plaintiff suffered adverse employment actions after engaging in protected whistleblowing activity.

2.          Plaintiff, a former staff member of IBRD, made protected whistleblower disclosures concerning IBRD's violations of International Laws, International Obligations, the IFI Act, other U.S. Laws. Instead of providing the protections mandated by the IFI Act and IBRD's Staff Rules, IBRD engaged in escalating retaliatory conduct, including misuse of performance-management tools, unsupported allegations, coercive and unwarranted Fitness-for-Duty directives, and ultimately a termination executed without due process.

3.          For more than two years, IBRD failed to appoint the required reviewer to investigate Plaintiff's March 8, 2023 retaliation complaint, in direct violation of the IFI Act and IBRD's Staff Rules mandating a prompt, impartial, and competent review. During this period, IBRD also furnished materially misleading representations to Plaintiff, the IBRD's Board of Executive Directors, and the United States Executive Director (US ED).

4.          The World Bank Administrative Tribunal (WBAT) lacks jurisdiction to adjudicate claims arising under the IFI Act. Plaintiff invokes this Court's jurisdiction pursuant to applicable exceptions to the Foreign Sovereign Immunities Act (FSIA), the IFI Act, and the Constitution of the United States.

5.        Plaintiff seeks redress for the harm resulting from IBRD's violations of the IFI Act and the U.S. Constitution. Plaintiff respectfully requests that this Court exercise jurisdiction consistent with Congress's express intent under Section 1505(11) of the IFI Act to ensure that whistleblowers have meaningful access to an independent adjudicative body.

## II.   JURISDICTION AND VENUE

6.        This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and Federal Laws of the United States, including the (IOIA), 22 U.S.C. § 288 et seq.; the International Financial Institutions Act (IFI Act), 22 U.S.C. § 262o-3–262o-4 and 262r–4 et seq.; and the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. §§ 1602–1611.

7.        Under *Jam v. International Finance Corp*., 139 S. Ct. 759 (2019),  IBRD possesses only restrictive immunity and may be sued where an FSIA exception applies. Plaintiff claims multiple tortious acts occurring within the United States, triggering the FSIA's non-commercial tort exception, 28 U.S.C. § 1605(a)(5).

8.        Plaintiff further alleges violations of his rights under the U.S. Constitution, including the First Amendment, Fifth Amendment, and Eighth Amendment, independently giving rise to federal-question jurisdiction.

9.        Federal-court review is necessary because no internal judicial mechanism in IBRD exists to adjudicate violations of the IFI Act. The WBAT has expressly held—in Decisions 606 and 656—that it lacks jurisdiction to adjudicate general breach of the IFI Act. Under established WBAT jurisprudence, even when the WBAT finds a due-process violation arising from an improper termination of Plaintiff, IBRD management may decline reinstatement

of the Plaintiff and instead elect to provide up to three years of salary as compensation. Reinstatement of Plaintiff, however, is a mandatory remedy under IFI Act § 1505(11), which requires the U.S. Executive Director to ensure outcomes that eliminate the effects of proven retaliation. Only this Court can provide full and effective relief for many of the IFI Act mandated remedies that WBAT cannot compel IBRD to comply.

10.        Venue is proper in the United States District Court for the District of Columbia under 28 U.S.C. § 1391(e)(1) because the Defendant is head quartered in District of Columbia.

## III.   PARTIES

11.        Plaintiff is a former staff member of the IBRD. Plaintiff holds a Master of International Management from Pondicherry University, which included coursework in International Law—a qualification he possessed at the time of recruitment to IBRD. In the course of his employment, Plaintiff observed irregularities within the Budget Department that, if unaddressed, would result in violations of International legal obligations binding upon IBRD.

12.        Defendant International Bank for Reconstruction and Development (IBRD), commonly known as the World Bank, is an International Organization headquartered in Washington, D.C., and is subject to suit in U.S. federal courts where an exception to the Foreign Sovereign Immunities Act (FSIA) applies.

13.        Plaintiff intends to file a motion for joinder under Federal Rule of Civil Procedure 19 seeking to join the United States Government, the U.S. Executive Director to the World Bank (in his official capacity), and the U.S. Secretary of the Treasury (in his official capacity) as necessary parties whose participation is required to afford complete relief and to ensure enforcement of statutory obligations arising under the IFI Act.

## IV.   STATEMENT OF THE FACTS

### A.  Prior WBAT Decisions – WBAT Cannot Adjudicate General Breach of the IFI Act

14.          Plaintiff brings this Complaint, in part, because the IBRD continues to engage in ongoing violations of the IFI Act. In May 2017, Plaintiff challenged the IBRD Ethics Unit's refusal to investigate misrepresentations of budget data and key performance indicators submitted to IBRD's Executive Board, asserting before the WBAT that the refusal to investigate constituted a violation of the IFI Act. In Decision No. 606, WBAT held that it lacked necessary competence to adjudicate general breach of IFI Act, and in Decision No. 656 it reaffirmed that this jurisdictional limitation to adjudicate general breach of IFI Act is binding precedent. Because IBRD's internal justice system expressly disclaims jurisdiction over breach of the IFI Act, no internal judicial mechanism exists to remedy or review IBRD's noncompliance with the IFI Act. Accordingly, Plaintiff asserts that this Court is the best available judicial forum capable of adjudicating IBRD's continuing breaches of the IFI Act and providing effective relief to ensure IBRD's compliance with the IFI Act.

### B.  Nov 2022: Congressional Guidance on IFI Act Violations

15.          In November 2022, Plaintiff contacted a Member of the United States Congress to seek guidance concerning the IBRD's violations of the IFI Act and other applicable Federal Laws. Congressional staff advised Plaintiff to: (i) report any acts of retaliation through IBRD's internal channels; and (ii) report IBRD's statutory noncompliance, including violations of the IFI Act and other U.S. Laws, to the US ED of World Bank. Congressional staff further instructed Plaintiff to notify the U.S. ED of any subsequent violations of the IFI Act, emphasizing that the U.S. ED has oversight and reporting obligations to Congress concerning breaches of the IFI Act.

**C.  Mar 2023 to Till Date: Failure to Appoint Reviewer / Breach of IFI Act § 1504(7)**

16.          On March 6, 2023, Plaintiff sought confidential advice from an IBRD

Ombudsman pursuant to Staff Rule 8.02.3.04 regarding reporting retaliation. The Ombudsman

determined that the Ethics Unit had a conflict of interest and advised that the Vice President of

Human Resources should appoint an alternate reviewer to ensure an impartial investigation of

retaliation. On March 8, 2023, at the Ombudsman's request, Plaintiff formally authorized the

Ombudsman to seek appointment of a suitable reviewer in accordance with IBRD Staff Rule

3.00.6.03. The Ombudsman subsequently confirmed that the request had been transmitted to HR.

Despite multiple written reminders, HR failed to appoint any reviewer for more than two years.

This failure to act constitutes a violation of IBRD Staff Rule 8.02.3.02(b), which mandates a fair,

prompt, and thorough review of retaliation complaints, and further constitutes a breach of

Section 1504(7) of the IFI Act, which requires IBRD to maintain effective procedures for

addressing staff complaints.

**D.  June 2023: Whistleblower Report on Breach of International Laws**

17.          On June 12, 2023, Plaintiff submitted a detailed whistleblower report to the IBRD

President, the U.S. Executive Director, and other senior leadership, highlighting that IBRD was

engaged in continuing violations of International Laws, International Obligations, and U.S.

statutes, including the IFI Act. Plaintiff further noted that WBAT's inability to adjudicate IFI Act

violations is inconsistent with Section 31 of the Convention on the Privileges and Immunities of

the Specialized Agencies (CPISA)

https://treaties.un.org/pages/ViewDetails.aspx?src=TREATY&mtdsg_no=III-2&chapter=3&clang=_en , 

which requires International Organizations to establish effective internal mechanisms for

adjudicating disputes. During a meeting on September 22, 2023, the Senior Vice President of

Legal claimed that only the U.S. Executive Director has authority to propose amendments to the WBAT rules that would enable the WBAT to adjudicate IFI Act claims, and that any such amendment would require approval by the Board of Governors.  IBRD is yet to amend WBAT rules and failed to create any alternate internal judicial mechanism capable of adjudicating IBRD's IFI Act violations. Plaintiff therefore asserts that this Court is best suited to exercise jurisdiction to adjudicate IBRD's continuing violations of the IFI Act and provide effective relief.

**E.  Oct 2023: Failure of HR Leadership to Respond to Request For Suitable Reviewer**

18.　　　　On October 4, 2023, and again on October 20, 2023, Plaintiff contacted the Vice President of HR, following the advice of IBRD's Deputy General Counsel, to reiterate that HR had failed to act on Plaintiff's March 8, 2023 request for the appointment of a suitable reviewer to investigate retaliation. Despite these follow-up communications, VP of HR failed to respond. HR's continued failure to respond or take action constitutes a violation of Section 1504(7) of the IFI Act, which requires IBRD to maintain effective procedures for the receipt, retention, and treatment of staff complaints, including retaliation complaints.

**F.  Punitive Damages for Willful, Reckless and Malicious Discard of the IFI Act**

19.　　　　Plaintiff repeatedly notified many IBRD senior managers that HR's ongoing failure to appoint a reviewer for the March 8, 2023 retaliation complaint constituted a violation of Section 1504(7) of the IFI Act. Plaintiff raised these violations on multiple occasions: (i) in the original March 8, 2023 retaliation complaint invoking due-process protections under the IFI Act; (ii) in a May 26, 2023 email to the Chief of Staff; (iii) in an October 20, 2023 email to the Vice President of HR, with a copy to the Deputy General Counsel; (iv) in a December 4, 2023 whistleblower report submitted to the HR and Audit Committees of the Board and to the U.S.

Executive Director; and (v) in a March 22, 2024 email to the Senior Vice President of Legal.

Despite these repeated notifications, IBRD failed to appoint a reviewer, initiate an investigation,

or otherwise comply with its obligations under Section 1504(7) of the IFI Act. This prolonged

and deliberate inaction deprived Plaintiff of any meaningful opportunity for due process and

constitutes willful, reckless and malicious disregard of the IFI Act compliance by IBRD. Plaintiff

therefore asserts entitlement to punitive damages.

### G.  Dec 4, 2023: Whistleblower Disclosure to Board and Loss of Key Evidence

20.        On December 4, 2023, acting in full compliance with IBRD Staff Rules governing

whistleblowing, Plaintiff submitted a protected disclosure to the HR and Audit Committees of

the Board requesting that the Board appoint an independent reviewer to investigate the March 8,

2023 retaliation complaint after HR failed to take any action. Plaintiff further warned that HR's

continued failure to appoint a reviewer placed relevant evidence at risk of being concealed or

lost. Shortly thereafter, one of the managers involved in the retaliation retired, resulting in the

loss of key evidence related to retaliation. HR's failure to act, combined with the resulting loss of

evidence, constitutes a violation of Section 1504(7) of the IFI Act, which requires IBRD to

maintain effective procedures for addressing staff complaints.

### H.  Dec 11, 2023: False Assurances to the Board — Tort Under FSIA

21.        On December 11, 2023, the Chair of the HR Committee informed Plaintiff that

IBRD management had assured the Board that Plaintiff's March 8, 2023 retaliation complaint

was receiving "urgent and necessary attention" from all relevant stakeholders, including HR.

These representations were materially false, as IBRD never appointed any reviewer and

undertook no investigative action. Providing false assurances to the Board constitutes **deceit** and

a tortious act within the meaning of the FSIA's non-commercial tort exception, 28 U.S.C. § 1605(a)(5). The HR Committee Chair's email to Plaintiff conveyed these assurances directly:

> "Your email; is well noted and I and other ED's have been assured that this is receiving the urgent and necessary attention from all stakeholders responsible for justice in the workplace, People and Culture (HR) and investigative units responsible to bring these type of issues to finality. We will be receiving a report on progress on the issues you have highlighted here and will decide on further course of action".

**I.  Jan 2024: Ethics Unit's Failure to Recognize HR's Misconduct Breaches IFI Act**

22.       On January 9, 2024, the Ethics Unit determined that HR's delay—by that point exceeding ten months—in appointing a reviewer to investigate the March 8, 2023 retaliation complaint did not constitute staff misconduct. This conclusion directly conflicted with IBRD's internal requirement that misconduct investigations be completed within six months. The Ethics Unit's refusal to treat HR's inaction as misconduct, and its failure to act independently in reviewing HR's conduct, constitute a breach of Section 1505(8) of the IFI Act, which requires IBRD to maintain an independent and effective investigative unit.

**J.  Disclosure of Whistleblower Identity Breaches Section 806 of SOX Act**

23.       On August 6, 2023, then Chief of Staff and the Vice President of Budget informed the President and the U.S. Executive Director that he would identify pathways to address International Law violations that the Plaintiff reported in his June 12, 2023 whistleblower disclosure. Following guidance from VP of Budget and Deputy General Counsel, Plaintiff engaged in protected follow-ups with the VP of HR, the VP of Ethics, the Chief Financial Officer, the Chief Data Privacy Officer, and other senior managers concerning IBRD's continuing violations of International Laws. Rather than addressing the substance of these

protected disclosures, management later characterized Plaintiff's follow-ups as "disruptive behavior" and used those communications as a basis for disciplinary action. This treatment violated Section 1504(7) of the IFI Act, which requires IBRD to ensure anonymity and confidentiality for staff complaints. Plaintiff's identity as a whistleblower was repeatedly disclosed to senior managers, and those disclosures were used to justify adverse actions against him. As recognized in *Halliburton, Inc. v. Admin. Review Bd*., No. 13-60323, 2014 WL 5861790 (5th Cir. 2014), disclosure of a whistleblower's identity itself constitutes adverse action under SOX Act. IBRD management's misuse of Plaintiff's protected follow-ups, undertaken at the direction of VP of Budget and Deputy General Counsel, therefore constitutes adverse action under Section 806 of the Sarbanes-Oxley Act. This also violates Section 1504(7) and Section 1505(11) of the IFI Act.

### K.  Misuse of Fitness-for-Duty Assessment Violates Sec 806 of SOX Act

24.         On December 21, 2023, Plaintiff was directed to undergo a Fitness-for-Duty (FFD) assessment based on allegations of "disruptive behavior." Plaintiff's line manager asserted that senior managers and HR believed Plaintiff had a serious medical condition affecting his performance and that such health concerns had been communicated to staff of the Health and Safety Unit. Despite five written requests from Plaintiff, staff of the Health and Safety Unit failed to provide details of Plaintiff's health concerns. Denying Plaintiff access to the evidence purportedly justifying the FFD referral violated his due-process right to notice and an opportunity to respond. Further, using the FFD process as a tool to suppress or deter protected whistleblowing activity constitutes adverse action under Sec 806 of Sarbanes-Oxley (SOX) Act . This also violates Section 1504(7) of the IFI Act, which requires IBRD to safeguard staff confidentiality in making protected reports, and Section 1505(11), which mandates adherence to

international best practices prohibiting retaliatory measures against whistleblowers. The following is an excerpt from the IBRD's Staff Rules governing FFD assessments:

> "Fitness for duty assessments may be requested when performance problems are believed to be health-related or when a staff member has been on sick leave for periods that are extended and/or recurring. A fitness for duty assessment will determine the presence and extent of any health-related impairment to perform assigned duties".

### L.  Feb 28, 2024: VP of Budget's Directive to Seek External Judicial Relief

25.        Plaintiff's decision to seek relief in this Court is also based on written guidance from the VP of Budget, who advised Plaintiff to raise concerns through IBRD's internal justice mechanisms and, if those mechanisms failed, to seek relief through an external justice system. After internal mechanisms failed to provide any review or remedy, Plaintiff is seeking this Court for Justice. IBRD is therefore **estopped** from arguing that this Court lacks jurisdiction. This directive is reflected in the February 28, 2023 Opportunity To Improve (OTI) memorandum:

> "As I have said to Thiagarajan before, if any member of staff has any concerns of any kind, they should act on them through the established internal justice system or, failing that, the external justice system to reach a resolution."

### M. Mar 13, 2024: Unlawful Gag Order in OTI Violates Sec 806 of SOX Act

26.        On March 13, 2024, Plaintiff was placed on OTI status based on allegations of "disruptive behavior," nearly all of which stemmed directly from his protected follow-ups regarding the March 8, 2023 retaliation complaint and the June 12, 2023 whistleblower disclosure. Although staff of a U.S. Congresswoman had expressly advised Plaintiff to contact the US ED and report IBRD's violations of U.S. Laws or when facing retaliation, the OTI terms imposed a blanket prohibition on contacting any Board member, including the US ED. This gag

restriction targeted Plaintiff's protected whistleblowing and his communications with oversight authorities, interfered with his US Constitution First Amendment right to petition the U.S. Government for grievances, and constitutes an adverse action under Section 806 of the SOX Act.

## N.  Mar 2024: SVP of Legal's Misrepresentation About Protected Disclosures

27.         On March 20, 2024, after reviewing Plaintiff's December 4, 2023 whistleblower disclosure to the Board, the Senior Vice President of Legal instructed Plaintiff to stop communicating with Board members and shareholders, incorrectly asserting that such disclosures were impermissible. Plaintiff explained that his whistleblower disclosure complied with IBRD Staff Rules, that HR had failed for more than a year to appoint a reviewer for the March 8, 2023 retaliation complaint, and that he had shared a draft of the whistleblower disclosure on November 20, 2023 without objection. SVP Legal's **willfully misrepresented** directive discouraging whistleblower disclosures to the Board —an oversight body responsible for ensuring compliance with the IFI Act—constitutes a tortious act under the FSIA, 28 U.S.C. § 1605(a)(5). The following is an excerpt from SVP Legal's March 20, 2024 email to Plaintiff:

> "As you and I discussed on September 22, 2023 and as you have been repeatedly advised over the course of the last six months, there are several options, resources and processes available to you in order to enable you to pursue your concerns and any complaints you may have – including through the various options through PAC and the Internal Justice System.  Successive managers, Vice Presidents, PAC and I have advised you to pursue the options and processes that are designed and available for precisely these purposes but these processes do not include outreach to members of the Board or shareholders and – again – I request that you discontinue this approach and work with your Manager, VP BPS or appropriate channels under the Internal Justice System."

**O. April 2024: Ethics Unit's Failed to Investigate Code of Conduct Violation**

28.         On June 12, 2023, Plaintiff submitted a whistleblower report to the President detailing that the Ethics Unit had declined in 2017 to investigate the misrepresentation of benchmark KPIs provided to the Board, despite the significance of those disclosures. Budget Director and VP of Budget initially in September 2023 acknowledged the issue and agreed to correct and disclose accurate KPIs, but later reversed course and refused to provide the rectified KPIs to the Board by violating Code of Conduct. When Plaintiff reported these Code of Conduct violations to the Ethics Unit on April 19, 2024, the Ethics Unit again refused to investigate, relying solely on its prior 2017 decision and declining to conduct any independent review. This refusal violated § 1505(8) of the IFI Act, which requires IBRD to maintain an impartial investigative mechanism capable of addressing Code of Conduct violations of senior staff.

**P. April 2024: Ethics Unit's Improper Deferral to Performance Review Process**

29.         Plaintiff's placement on an Opportunity to Improve (OTI) was not merely improper but a retaliatory measure imposed because he engaged in protected whistleblowing. The allegations of "disruptive behavior" used to justify the OTI were unfounded and served as a pretext to punish Plaintiff for reporting misconduct. When Plaintiff brought this retaliation to the Ethics Unit on April 19, 2024, the Unit abdicated its statutory and regulatory obligations by refusing to investigate. Staff Rule 3.00.06 requires that suspected misconduct—including retaliation—be independently investigated and expressly prohibits managers from using performance management to adjudicate misconduct. By directing Plaintiff back to performance management, the Ethics Unit knowingly enabled management to function simultaneously as accuser, reviewer, and decision-maker. This deliberate refusal to investigate, and the resulting institutional shielding of retaliation, violated the mandatory protections established under IFI Act

§§ 1504(7), 1505(8), and 1505(11). IBRD failed to maintain effective retaliation-handling mechanisms and also failed to ensure the independence of investigative unit.

**Q. April 2024: Conflict of Interest in OTI Liaison Appointment**

30.          The HR manager responsible for failing to act on Plaintiff's March 8, 2023 request for appointment of a reviewer to investigate retaliation was later designated as the Opportunity to Improve (OTI) Liaison Officer (OLO), placing him in a direct supervisory position over the same retaliation complaint he had previously failed to process. Plaintiff objected to this appointment and submitted a conflict-of-interest complaint to the Ethics Unit. The Ethics Unit declined to address the conflict, despite its obligation to ensure independence and impartiality in misconduct review. Allowing an individual with a direct role in the underlying allegations to oversee the OTI process violated Section 1505(8) of the IFI Act, which requires IBRD to maintain an independent investigative mechanism free from conflicts of interest, and Section 1504(7), which mandates effective procedures for treatment of complaints.

**R. May to Dec 2024: OTI Meetings Failed to Address Request for Reviewer**

31.          During OTI meetings held in May 2024, July 2024, and December 2024, Plaintiff repeatedly raised that HR had still not appointed a reviewer for the March 8, 2023 retaliation complaint, despite more than a year having passed. The OTI Liaison Officer (OLO)—who was the same HR manager responsible for the original failure to act—repeatedly pressed Plaintiff to undergo a Fitness-for-Duty (FFD) assessment, even though no evidence existed of any health-related concerns impacting Plaintiff's performance. The OLO further instructed Plaintiff to report HR's inaction to the Ethics Unit, despite the Ethics Unit's January 9, 2024 conclusion that HR's delay did not constitute misconduct. The OLO also stated that no timeline existed for HR to decide on appointment of a reviewer. HR's continued refusal to act, combined with the

absence of any timeline, constitutes a violation of Section 1504(7) of the IFI Act, which requires IBRD to maintain effective procedures for receiving and addressing retaliation complaints.

### S. Oct 2024: Improper Use of PMR to Introduce Unsubstantiated Allegations

32.        The Performance Management Review (PMR) report issued on October 10, 2024 stated that Plaintiff had no performance deficiencies and acknowledged that the OTI stemmed solely from Plaintiff's alleged "disruptive behavior". Plaintiff responded in detail with supporting evidence every disruptive behavior allegation made in both OTI memorandum during PMR review process. Nevertheless, Plaintiff's line management submitted new, unsubstantiated harassment allegations to the PMR reviewer as justification for placing the Plaintiff in OTI status without providing Plaintiff advance notice of those allegations or an opportunity to respond. By (i) introducing harassment allegations for the first time during the PMR process, (ii) failing to refer those allegations to the Ethics Unit as required under IBRD's Staff Rules governing misconduct matters, and (iii) permitting line management to function simultaneously as accuser, reviewer, and decision-maker in connection with harassment allegations, Plaintiff's managers violated IBRD's Staff Rules; Section 1504(7) of the IFI Act (requiring effective internal procedures for addressing harassment complaints); and Section 1505(11) (whistleblower protection) of the IFI Act.

### T. Dec 2024: Misclassification of Retaliation Complaint as Re-Litigation

33.        At the OTI meeting held on December 4, 2024, the OTI Liaison Officer and the Budget Director informed Plaintiff—incorrectly—that his March 8, 2023 retaliation complaint had already been resolved by prior World Bank Group proceedings. This assertion was false. Plaintiff had never filed any retaliation complaint before March 8, 2023, and no prior investigation or adjudication had occurred. Misrepresenting the status of Plaintiff's March 8,

2023 retaliation complaint and treating it as previously resolved deprived Plaintiff of any meaningful opportunity to have his March 8, 2023 retaliation complaint received, reviewed, or investigated. Based on false assertions Plaintiff was recommended to undergo Fitness For Duty assessment. Such conduct demonstrates that IBRD lacks an effective mechanism for receiving and addressing retaliation complaints, in violation of Section 1504(7) of the IFI Act. The meeting minutes further reflect this improper dismissal, stating:

> "However, as in all previous meetings, you immediately started making a series of comments, not all very coherent, such as repeating old allegations and comments, which you do not seem to be able to put past you, although they have been addressed by the appropriate WBG institutions already. You also stated that HR never addressed your previous requests. As in previous opportunities, I suggested to you that you consider undergoing a fitness-for-duty assessment, which you have not agreed to undergo yet".

## U.  Mar 25: HR Attempt to Silence Whistleblowing Through OTI Removal Conditions

34.        At the March 17, 2025 OTI meeting, the OTI Liaison Officer (OLO) informed Plaintiff that HR would support removing him from OTI status based on demonstrated good performance and good behavior only if Plaintiff agreed to accept "a fresh start" and refrained from raising HR's ongoing failure to appoint a reviewer for the March 8, 2023 retaliation complaint. The OLO further stated that any disclosure by Plaintiff regarding HR's more than two-year failure to assign a reviewer would be deemed "disruptive behavior," treated as a violation of the OTI terms, reclassified as a performance deficiency, and used as grounds for termination. Conditioning removal from OTI status on Plaintiff's agreement to remain silent about HR's failure to act deprived Plaintiff of a meaningful opportunity to seek protection under

internal procedures for addressing retaliation complaints. Plaintiff therefore requested additional

time to consider the removal of OTI status. HR's use of the OTI process to conceal its own

misconduct and deter whistleblowing constitutes prohibited retaliation under Section 1505(11) of

the IFI Act, which requires IBRD to incorporate international best practices prohibiting

retaliatory measures against whistleblowers.

### V.  May 12, 2025: 14 Day Termination Notice for Protected Disclosure

35.        On April 8, 2025, Plaintiff met with his former line manager and provided a

document titled "*Petition to the U.S. Government on Waiver of IBRD's Immunity*". The Petition

requested that the U.S. Government consider waiving IBRD's immunity due to HR's more than

two-year failure to appoint a reviewer for the March 8, 2023 retaliation complaint and continued

to violate the IFI Act. Plaintiff requested his former line manager to transmit the Petition to HR

management in an effort to prompt internal action and avoid the need for external intervention by

the U.S. Government. Despite this protected disclosure, on May 12, 2025, Plaintiff received a

fourteen-day termination notice alleging that he had contacted staff "outside appropriate

channels," purportedly in violation of OTI terms. Plaintiff's communication with his former line

manager was protected activity in full compliance with IBRD Staff rules on whistleblowing, and

IBRD's reliance on this communication as the basis for termination constitutes retaliation in

violation of Section 1505(11) of the IFI Act. Plaintiff had repeatedly raised his March 8, 2023

request for a suitable reviewer through multiple internal channels, yet HR never provided a

written response.

### W. May 12, 2025: Punitive and Retaliatory Misuse of Fitness-for-Duty Process

36.        In the May 12, 2025 termination notice, Plaintiff was directed to undergo a

Fitness-for-Duty (FFD) assessment. During a subsequent meeting, Plaintiff's manager asserted

that Plaintiff's March 8, 2023 retaliation complaint constituted "relitigating" retaliation

previously adjudicated by the WBAT to justify FFD referral. This assertion was false. Prior to

March 8, 2023 no such retaliation complaint was ever filed with WBAT by Plaintiff, and no

adjudication occurred. Management's reliance on this misrepresentation to justify an FFD

referral lacked any factual or procedural basis and constituted a misuse of IBRD's Staff Rules

governing FFD assessments. The FFD mandate—issued under threat of termination and

premised on unfounded assertions regarding Plaintiff's mental or physical health—constituted

punitive and coercive treatment unrelated to job performance. Such conduct violates Section

1505(11) of the IFI Act, which require adherence to international best practices, as well as

constitutional norms barring arbitrary and disproportionate punishment. Although the Eighth

Amendment traditionally applies in the criminal context, federal courts recognize that

constitutional principles prohibiting coercive, arbitrary, or degrading governmental action extend

to entities exercising quasi-governmental authority and imposing punitive measures. Here, IBRD

management weaponized the FFD and OTI process solely to silence Plaintiff's protected

disclosures, including his escalations to the Board concerning IBRD's noncompliance to assign a

reviewer to investigate retaliation Plaintiff reported on March 8, 2023. The termination notice

states that:

> "Many times in the past and more recently during the OTI review meetings, you have
>
> been asked to undergo a Fitness-for-Duty (FFD) assessment (see May 1, July 19, and
>
> Dec 17, 2024, emails) due to management's concern for your health and well-being,
>
> your comments regarding your stress levels, and your inability to control reckless
>
> comments and actions.  I recommend that you submit to a Fitness for Duty (FFD)
>
> assessment with the WBG's Health Services Department in the next 14 calendar days.

Management may defer their decision for your termination and possibly take other actions based on the outcome of the assessment."

## X.  May 26, 2025: Plaintiff's Response and Protection Under IFI Act §1505(11)

37.         On May 26, 2025, Plaintiff submitted a written response to the May 12, 2025 fourteen-day termination notice and copied the U.S. Executive Director, an advisor to the U.S. Executive Director, and other appropriate officials. In his response, Plaintiff explained that his disclosure of the "*Petition to the U.S. Government on Waiver of IBRD's Immunity*"—which requested U.S. Government consideration of an immunity waiver due to HR's two-year failure to appoint a reviewer for the March 8, 2023 retaliation complaint—constituted protected whistleblowing activity under IBRD Staff Rules on whistleblowing. Plaintiff further asserted that Section 1505(11) of the IFI Act obligates the U.S. Executive Director to ensure that whistleblowers are protected from retaliation and that any retaliatory measures are remedied. Plaintiff's communication was fully protected activity, and IBRD's use of this communication as a basis for termination constitutes unlawful retaliation under Section 1505(11) of the IFI Act.

## Y.  June 2025: False Assertions to U.S. Executive Director's Office — Tort Under FSIA

38.         In June 2025, Plaintiff learned from the Advisor to the U.S. Executive Director that IBRD management had falsely represented to the U.S. Executive Director's office that Plaintiff had "serious documented performance issues" and that termination was warranted on that basis. Management further asserted—incorrectly—that Section 1505(11) of the IFI Act that requires US ED to intervene for whistleblower protections does not apply as Plaintiff has a track record of written poor performance. These assertions were false. Plaintiff had no documented performance issues, and none had ever been provided to him. To the contrary, both Plaintiff's line manager and the Budget Director had confirmed in writing that Plaintiff's performance was

satisfactory. IBRD management's knowingly making false assertions to the U.S. Executive Director were intended to prevent oversight, obstruct protections required under Section 1505(11) of the IFI Act, and secure Plaintiff's termination under false pretenses. Making such knowingly false representations to a U.S. Government official constitutes **deceit** and a tortious act within the meaning of the FSIA's non-commercial tort exception, 28 U.S.C. § 1605(a)(5).

## Z.  June 9, 2025: Termination Memorandum Based on Nonexistent Documentation

39.          On June 9, 2025, Plaintiff received a final termination memorandum asserting that Plaintiff's line manager had previously "notified Plaintiff in writing" of performance deficiencies and "ways to improve." This assertion is materially false. Plaintiff never received any written communication from his line manager identifying performance issues or outlining any required improvements. The Budget Director—after consulting the Director of HR and the Acting Vice President of Budget—relied on this non-existent documentation to invoke Staff Rule 7.01.12 (Unsatisfactory Performance) as the basis for termination. Terminating an employee on the basis of undocumented and uncommunicated performance allegations violates fundamental due-process requirements of notice and an opportunity to respond under the Fifth Amendment, which prohibits arbitrary, pretextual, and procedurally defective termination actions. It also constitutes retaliation in violation of Section 1505(11) of the IFI Act, which requires whistleblower have access to best legal burden of proof in whistleblower-retaliation cases.

## AA.     May 12, 2025 Vs June 9, 2025: Contradictory Performance Statements

40.          Plaintiff's line manager confirmed in a May 12, 2025 email that, "After a year of candid progress review conversations… you had performed your work program duties successfully." Despite this written acknowledgment of satisfactory performance, the June 9, 2025 termination memorandum asserted that Plaintiff had "poor performance documentation,"

even though no such documentation existed and none was ever provided to Plaintiff. Plaintiff

was on approved annual leave from May 12, 2025 through June 30, 2025, his final day of

employment, and never received any notice or warning of alleged poor performance during this

period. IBRD's reliance on knowingly false assertions regarding Plaintiff's performance as the

stated justification for his termination constitutes retaliation for protected disclosures concerning

HR's more than two-year failure to appoint a reviewer. The use of **willfully misrepresented**

performance allegations to justify Plaintiff's termination further constitutes a tortious act under

the FSIA's non-commercial tort exception, 28 U.S.C. § 1605(a)(5) and violates Section 1505(11)

of the IFI Act.

**BB.    June 12, 2025 & June 19, 2025: Failure to Produce Alleged Performance Records**

41.         On June 12, 2025 and June 19, 2025, Plaintiff requested that the Budget Director

share the written poor performance communications referenced in the June 9, 2025 termination

memorandum. On June 24, 2025, the Budget Director responded but failed to produce any such

documentation, stating only: "Again, the decision to terminate your appointment was not taken

lightly. Respectfully, I will not respond further." The refusal to produce the alleged written poor

performance records—records that management claimed formed the basis of termination—

violates Plaintiff's due-process rights under the Fifth Amendment, which requires that an

employee be afforded notice of the evidence relied upon and a meaningful opportunity to

respond before adverse action is imposed. Section 1505(11) of the IFI Act further requires IBRD

to implement international best practices in whistleblower-protection procedures, including

evidentiary transparency and fair adjudicative safeguards. Federal administrative guidance,

including Office of Personnel Management (OPM) standards, entitles employees should be

disclosed of all materials forming the basis of an adverse action. As the Federal Circuit held in

*Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368 (Fed. Cir. 1999), it is "constitutionally impermissible" for a deciding official to rely on new or material information not disclosed to the employee, as doing so deprives the employee of a fair and impartial process. IBRD management's reliance on undisclosed materials, coupled with its refusal to provide Plaintiff with the underlying documentation upon request, constituted a violation of procedural due process under the Fifth Amendment.

**CC.    June 24, 2025: VP of HR Failed to Respond Request to Rescind Termination**

42.         Plaintiff's termination—imposed without any documentary evidence of poor performance and justified through non-existent written performance warnings after Plaintiff disclosed HR's more than two-year failure to appoint a reviewer—constitutes unlawful retaliation. On June 24, 2025, Plaintiff requested that the VP of HR rescind his termination and place him on administrative leave to permit the filing of a formal retaliation complaint within IBRD. Plaintiff received no response. HR's refusal to respond to Plaintiff's request to rescind the termination violates Section 1505(11) of the IFI Act, which requires IBRD to protect staff from retaliation for lawful internal disclosures and to apply the legal burden of proof consistent with international best practices—placing the burden on the employer, not the whistleblower, to disprove retaliation once protected activity is established. This further constitutes a denial of due process under the Fifth Amendment, which prohibits arbitrary and pretextual adverse actions.

**DD.    June to Oct 2025: Misrepresentation About Re-litigation in WBAT**

43.         Plaintiff submitted a direct application to WBAT on May 5, 2025, requesting that the WBAT order IBRD to appoint a reviewer for the March 8, 2023 retaliation complaint after IBRD failed for more than two years to do so. On June 6, 2025, IBRD's Deputy General Counsel (DGC) falsely represented to the WBAT that Plaintiff's March 8, 2023 retaliation

complaint had already been adjudicated in WBAT Decisions 586, 606, and 656. Plaintiff

corrected the record on August 1, 2025. Nevertheless, on September 25, 2025, IBRD's DGC

repeated this false assertion, and Plaintiff again corrected it on October 17, 2025. In its October

29, 2025 filing, IBRD's DGC declined to correct these misstatements and instead quoted

Plaintiff's October 17, 2025 response out of context to suggest that Plaintiff was improperly

"re-raising" a previously resolved retaliation claim with WBAT. These repeated, knowing

misrepresentations—made after Plaintiff had corrected the record—constitute **deceit** and a

tortious act under the FSIA's non-commercial tort exception, 28 U.S.C. § 1605(a)(5), because

they were intended to mislead a judicial body, obstruct adjudicative review, and impair

Plaintiff's access to an effective remedy.

**EE.    June to Oct 2025: Misrepresentation of WBAT Time Limits**

44.         IBRD's DGC further asserted before the WBAT that Plaintiff was challenging a

purported "final decision" issued on March 8, 2023 regarding the appointment of a reviewer, and

that Plaintiff's May 5, 2025 WBAT application was therefore time-barred under the WBAT's

120-day jurisdictional limit. This assertion was materially false. IBRD's own Ethics Unit

misconduct brochure states that the 120-day period begins only when a complainant of

misconduct is formally notified of the outcome of an investigation—not when the complaint is

submitted. Plaintiff was never assigned a reviewer, no investigation was ever initiated, and no

outcome was ever issued. Reliance on a non-existent "final decision" date constituted a

deliberate misrepresentation intended to defeat jurisdiction and obstruct adjudicatory review, and

therefore amounts to **deceit** and a tortious act under the FSIA's non-commercial tort exception,

28 U.S.C. § 1605(a)(5).

**FF.Oct 16, 2025: Freezing Funds by US Congress for IFI Act Non-Compliance**

45.         Beginning in 2024, Plaintiff notified IBRD that the IFI Act requires IFIs maintain

effective mechanisms for staff to safely report misconduct and that US Congress has previously

exercised its authority to freeze U.S. funding to non-compliant IFIs. Plaintiff also informed

IBRD that Congressional staff confirmed that, in 2011, the U.S. Congress froze funding to the

Asian Development Bank (AsDB) until the Secretary of the Treasury certified that AsDB had

made substantial progress toward meeting U.S. policy goals set forth in the IFI Act. See §

2126(c) of Department of Defense and Full-Year Continuing Appropriations Act, 2011 Public

Law 112–10 (https://www.congress.gov/112/plaws/publ10/PLAW-112publ10.pdf ).  In

December 2023, IBRD assured Board members that Plaintiff's March 8, 2023 request for the

appointment of a reviewer was receiving "urgent and necessary attention." Nevertheless, in

WBAT proceedings, IBRD's DGC made willful misrepresentations by arguing that WBAT

lacked a basis to order the assignment of the reviewer requested on March 8, 2023. Plaintiff

requested that WBAT transmit all filings, including IBRD's misrepresentations, to the US ED

pursuant to WBAT Rule 23 so that the US ED could intervene consistent with obligations arising

under the IFI Act. These deliberate misrepresentations, intended to block oversight and prevent

corrective action, constitute **deceit** and a tortious act under the FSIA's non-commercial tort

exception, 28 U.S.C. § 1605(a)(5). The following is excerpt from Plaintiff's Octobar 16, 2025

submission with WBAT:

> "Request to Tribunal, Board and Senior Management:  In 2024, I informed the
>
> Respondent that U.S. Congress had previously frozen funding to the Asian
>
> Development Bank (AsDB) until the U.S. Secretary of the Treasury confirmed that
>
> AsDB had made substantial progress in meeting U.S. policy goals under the IFI Act.

Despite this, the Respondent continued to cite the Tribunal's lack of jurisdiction over IFI Act breaches and persisted in violating its provisions. As a former staff of IBRD, I urge the Tribunal, Board and Senior Management to take immediate actions to remedy these breaches internally, rather than risk corrective measures by the U.S. Congress or Government."

**GG.    Oct 29, 2025: IBRD Claims IFI Act Is Irrelevant — Governance Breakdown**

46.        In its October 29, 2025 WBAT submission responding to Plaintiff's October 16, 2025 filing, IBRD asserted that the IFI Act was "irrelevant." While this position reflects WBAT's limited jurisdiction—given that the WBAT has consistently held it cannot adjudicate general breach of the IFI Act — it does not diminish the IFI Act's relevance or applicability in this Court. Unlike WBAT, this Court has full authority to interpret and apply U.S. statutes, including the IFI Act, and to determine whether IBRD's conduct contravened U.S. policy mandates enacted by Congress in the IFI Act. IBRD's attempt to characterize the IFI Act as irrelevant in WBAT proceedings therefore has no bearing on federal judicial review and further underscores the structural gap that necessitates this Court's intervention. The following is an excerpt from IBRD's October 29, 2025 WBAT submission

"Applicant's Reply, on the other hand, offers little in the way of a coherent response to Respondent's Preliminary Objections. Instead, Applicant's Reply makes arguments on the merits that are not relevant to jurisdictional issues and meanders through irrelevant law (for example, the IFI Act, see Applicant's Reply, Section D; even though inapplicable, Applicant clings to the mistaken notion that a sense of the Congress provision, which urges the Executive Branch to use its "voice and vote" at the Board is somehow actionable), and makes impermissible requests, such as asking

the Tribunal to transmit a copy of the Application to the U.S. Executive Director, the

Chair of the Audit Committee, and the Chair of the Human Resources Committee of

the Board (See Applicant's Reply, para. 13). Respondent will not address all such

obviously flawed portions of Applicant's Reply in this submission."

**HH.    Staff Association Counselor: Precedent by WBAT on Wrongful Termination**

47.        In June 2025, an IBRD Staff Association Counselor (SAC), acting upon

suggestions from IBRD management, advised Plaintiff to consider voluntarily retiring to avoid

the adverse consequences of termination. The SAC represented that voluntary retirement would

preserve the possibility of Plaintiff's future reemployment with IBRD as staff or consultant, and

warned that termination could negatively affect background checks with prospective employers

and foreclose Plaintiff's future employment with IBRD. The SAC further cautioned that, even if

the WBAT were to find Plaintiff's termination  was carried out without due process—consistent

with established WBAT jurisprudence, including WBAT Decisions 580 and 713—IBRD

management could still refuse to reinstatement Plaintiff and instead elect to pay up to three

years' salary as compensation for wrongful termination. This purported "advice," presented as

supportive guidance, constituted pressure on Plaintiff to relinquish statutory and constitutional

protections and avoid independent scrutiny of IBRD's retaliatory actions. These events illustrate

pervasive deficiencies in IBRD's Internal Justice System and its continued departures from U.S.

policy mandates established under the IFI Act.

# V.   ADDENDUM STATEMENT OF FACTS

## II.  Ethics Failure to Investigate Questionable Accounting Practice of Internal Auditors

48.          In 2014, Plaintiff made a protected disclosure to the IBRD Ethics Unit concerning materially inaccurate depreciation figures in IBRD's 2015 Budget Document for Fiscal Years 2015–2017. IBRD initiated an Internal Audit review. In May 2015, Internal Audit approved an accounting treatment under which capital projects expected to be completed in Fiscal Year 2016 were classified as "work-in-progress," citing the absence of a depreciation budget. Although those projects were completed in Fiscal Year 2016, their completion dates were reassigned to later fiscal years (2017 and beyond) to defer the commencement of depreciation. Plaintiff reported this approval to the Ethics Unit as suspected misconduct by Internal Audit. The Ethics Unit declined to investigate, characterizing Plaintiff's disclosure as a "professional disagreement," and IBRD later advanced the same position before the WBAT. By refusing to investigate a questionable accounting practice approved by Internal Audit, IBRD failed to maintain an independent Ethics and Internal Audit function, in violation of Section 1505(8) of the IFI Act. An April 2018 WBAT submission by IBRD's Legal Counsel stated:

> "his [Plaintiff's] disagreement is not tantamount to a violation of his contract of
> employment or terms of appointment. To this effect, EBC [Ethics unit] reviewed
> Applicant's allegations and declined to assert jurisdiction"

## JJ.  July 2015 to June 2016: Plaintiff Helped IBRD Avoid $60m of Accounting Error

49.          On July 7, 2015, IBRD's Legal Department advised Plaintiff to address the outstanding depreciation-related issues through his line management. Plaintiff then worked with the Vice President of Budget to correct Internal Audit errors affecting depreciation. On July 7, 2015, Plaintiff reported to the VP of Budget that, as of July 1, 2015—the first day of Fiscal Year

2016—there was a deficit exceeding $2m in the Board-approved depreciation budget for that fiscal year. As a result of Plaintiff's efforts, more than $60 million in IBRD capital projects were recognized as completed in Fiscal Year 2016 rather than being classified as work-in-progress, contrary to the Internal Audit recommendation. Plaintiff documented these facts, with supporting evidence, in his June 12, 2023 whistleblower report to the President and requested that IBRD ensure a safe working environment for reporting impairments and deficiencies identified in multiple Internal Audit reports. Following that June 12, 2023 disclosure, Plaintiff was subjected to a hostile work environment that impaired his ability to disclose additional details concerning Internal Audit impairments in three Internal Audit reports. These facts demonstrate that, notwithstanding escalation to the President, IBRD failed to provide a safe environment for reporting suspected misconduct by Internal Audit, in violation of Section 1504(7) of the IFI Act. Plaintiff's June 12, 2023 whistleblower submission stated, in relevant part:

> "Addressing my concerns that can facilitate disclosing the details of Internal Audit impairments in three Internal Audit reports (that is not disclosed in this document).".

**KK.    Post June 2023: Non-Compliance - Bretton Woods Agreement Act & SEC Rules**

50.        Plaintiff appealed the Ethics Unit's refusal to investigate the questionable accounting practice approved by Internal Audit to the World Bank Administrative Tribunal (WBAT). In Decision No. 586, the WBAT upheld the Ethics Unit's refusal to investigate and held that general accounting and budget practices do not form part of Plaintiff's contract of employment with IBRD. In Decision No. 606, the WBAT determined that Decision No. 586 constitutes binding precedent. In his June 12, 2023 whistleblower report to the President, Plaintiff reported that WBAT Decision No. 586 is inconsistent with IBRD's periodic filings with the U.S. Securities and Exchange Commission (SEC), in compliance with Bretton Woods

Agreements Act (BWA Act), 22 U.S.C. § 286 et seq. Beginning June 12, 2023, Plaintiff

repeatedly requested that senior IBRD management initiate amendments to the Tribunal Rules to

override Decision No. 586 so that the Ethics Unit could investigate complaints involving

questionable accounting practices and that WBAT should direct the Ethics Unit to investigate

when Ethics unit declines to investigate complaints involving questionable accounting practices.

IBRD's failure to amend the Tribunal Rules renders materially inaccurate its SEC filings stating

that "IBRD has in place procedures for receiving, retaining, and handling recommendations and

concerns relating to business conduct identified during the accounting, internal control, and

auditing processes."  Such SEC filings are in compliance with Section 15(a) of BWA Act.

**LL.**     **Oct 25, 2024: Ethics Unaddressed Complaint on Questionable Accounting Practice**

51.          During an October 25, 2023 meeting, Ethics Unit managers stated that, consistent

with WBAT Decisions 586 and 606, the Ethics Unit was not obligated to investigate the June 12,

2023 Plaintiff's complaint concerning a questionable accounting practice and instructed Plaintiff

to address the matter through his line management (Budget). These statements and actions

demonstrate that IBRD lacks a confidential and effective mechanism for receiving, retaining, and

handling complaints regarding questionable accounting practices, in violation of Section 1504(7)

of the IFI Act, applicable SOX Act requirements, SEC regulations, and that IBRD has failed to

maintain an independent investigative function as required by Section 1505(8) of the IFI Act.

Plaintiff's June 12, 2023 whistleblower submission stated, in relevant part:

> "Recently I had noticed questionable accounting practice followed by IBRD caused
>
> by flawed budget practice that impacts IBRD's financial statement by less than $5m
>
> for the fiscal year ending June 2023. There is no established institutional mechanism
>
> in IBRD that can receive, retain and handle my concerns"

**MM.    Nov 2023: Budget Director Refusal of Accounting Complaint Violates SOX Act**

52.         Following the October 25, 2023 meeting with Ethics managers, and consistent

with their instruction, Plaintiff raised the June 12, 2023 concern with the Budget Director

regarding a questionable accounting practice involving an amount of less than $5 million. The

Budget Director, designated by the Vice President of Budget to review the June 12, 2023

submission, concluded that the deviation had no material impact on IBRD's financial statements

and declined to afford Plaintiff an opportunity to present or explain the underlying facts.

Plaintiff's June 12, 2023 disclosure was not limited to the dollar magnitude of the variance; it

expressly sought the establishment of an institutional mechanism compliant with the IFI Act,

BWA Act, SOX Act, and SEC regulations for the confidential receipt, evaluation, and handling

of complaints concerning questionable accounting practices, including by amending the WBAT

Rules to override WBAT Decisions 586 and 606. By treating Plaintiff's concern as immaterial

and routing the complaint exclusively through line management, IBRD management failed to

maintain confidential and anonymous procedures for the receipt and handling of

accounting-related complaints, as required by Section 301(4)(B) of the SOX Act as established

by IBRD's Audit Committee of the Board.

**NN.    Jan 2024: Failure to Amend WBAT Decision 586 Violates SOX § 302 Obligations**

53.         In January 2024, Plaintiff submitted a written request to IBRD's Chief Financial

Officer (CFO) pleading IBRD amend the WBAT Rules to override Decision No. 586 and to

ensure confidential and anonymous procedures for the receipt and handling of complaints

concerning questionable accounting practices, after the Ethics Unit again refused to investigate

Plaintiff's complaint regarding a questionable accounting practice. The Vice President of Budget

had previously advised Plaintiff to seek external remedies if IBRD's internal mechanisms failed.

In his communication to the CFO, Plaintiff stated that he was refraining from submitting a report to the SEC whistleblower line and expressly affirmed that he sought no personal financial gain, including any monetary award or share of penalties that the SEC may grant to whistleblowers, from any potential SEC enforcement action against IBRD. The CFO did not take corrective action or initiate amendments to the WBAT Rules. As a result, IBRD's SEC filings remained inaccurate and constituted an internal control failure. As the certifying official for those SEC filings, the CFO's failure to take corrective action constitutes a violation of Section 302 of the SOX Act and demonstrates that IBRD failed to consistently apply the COSO framework as claimed in its periodic SEC filings. The following is an excerpt from Plaintiff's January 2024 email to the CFO:

> "IBRD's Legal counsels had claimed in the Tribunal [WBAT] that Tribunal's decision 586 is a binding precedent.  In future Staff cannot report questionable accounting practice to Ethics or appeal Ethics unit refusal to review questionable accounting practice with the Tribunal.
>
> Till date, I was not made aware of IBRD management's decision about amending Tribunal rules overriding decision 586. Once again through this document, I patiently keep re-raising the same concerns so that IBRD can avoid disruptive actions by SEC. I am fully aware that by reporting to SEC whistleblower line I can get a share of financial penalty that SEC may impose.  I am not interested in making private financial gain at the costs of bringing reputational risk to IBRD (https://www.sec.gov/whistleblower )."

**OO.    Mar 2024: Correspondence with SVP of Legal about breach of SEC Regulations**

54.         On March 20, 2024, IBRD's Senior Vice President (SVP) for Legal contacted Plaintiff, stated that he had reviewed Plaintiff's email to the Executive Directors, and advised the

Executive Directors not to respond to Plaintiff's message. The SVP for Legal further requested that Plaintiff refrain from contacting the Board or shareholders. On March 22, 2024, Plaintiff responded to the SVP for Legal and explained that, despite multiple reminders, IBRD had failed to comply with SEC regulations. Because IBRD had not amended the WBAT Rules to override Tribunal Decision 586, IBRD's representation in its periodic SEC filings — that "IBRD has procedures in place for receiving, retaining, and handling recommendations and concerns relating to business conduct identified during the accounting, internal control, and auditing processes" — was inaccurate and misleading. Such SEC filings are in compliance with Section 15(a) of the Bretton Woods Agreements Act, 22 U.S.C. § 286k–1. The following excerpt is from Plaintiff's March 22, 2024 email to the SVP for Legal:

> "U.S. lawmakers expect that the U.S. Executive Director has taken the steps required by the IFI Act to amend Tribunal Decision 586. U.S. lawmakers determined that Tribunal Decision 586 violates the IFI Act and SEC regulations. I have repeatedly explained over the past nine months that there is no internal grievance mechanism or internal process within IBRD capable of amending Tribunal rules. Management may request that the Board recommend amendments to Tribunal rules, but only the Board of Governors has authority to amend those rules. PaC [HR] or any other unit within the Internal Justice System, as referenced in your email, does not possess authority to amend Tribunal rules"

**PP. December 2024: Ethics Threat of Disciplinary Actions Constitutes Retaliation**

55.         On November 26, 2024, Plaintiff sought guidance from the Ethics Navigator regarding an unresolved complaint concerning a questionable accounting practice involving less than $5 million that Plaintiff first reported in his June 12, 2023 whistleblower submission to the President. Ethics had previously referred the matter to line management, which declined to

afford Plaintiff an opportunity to present or explain the underlying facts. On December 3, 2024,

the Ethics Navigator warned Plaintiff not to raise matters deemed "already addressed" and

cautioned that he could face disciplinary action for "reckless allegations." These warnings

constitute adverse action under Section 806 of the SOX Act, because they would deter a

reasonable person from reporting questionable accounting practices. The following is an excerpt

from the Ethics Navigator's December 3, 2024 email:

> "Upon reviewing EIJ's internal data, it has come to our attention that in you have
>
> previously raised allegations with EIJ's Investigations team that may pertain to the
>
> matters you intend to raise with the EIJ Navigator through a follow-up email and
>
> documentation. Before you provide us with any further information regarding your
>
> concerns, we would like to remind you that if these concerns have already been addressed
>
> and determined to be unsubstantiated, you should refrain from raising them again to
>
> avoid making allegations with reckless disregard for their truth.
>
> In an email to you dated April 19, 2024, EIJIN informed you that reckless allegations are
>
> considered a form of misconduct, which could be reviewed by the office in accordance
>
> with Staff Directive 3.07, Section 7.05. We therefore encourage you to exercise caution
>
> and good judgment in deciding whether to contact us again with information supporting
>
> the concerns raised during our meeting. This is to ensure that the information is provided
>
> in good faith and takes into consideration previous determinations"

## QQ.    Dec 2025: Retaliation WBAT Application and Denial — Violates IFI Act § 1504(7)

56.    On May 5, 2025, Plaintiff filed an application with the World Bank

Administrative Tribunal (WBAT) requesting that the WBAT direct IBRD to appoint an

independent reviewer to investigate the retaliation that Plaintiff reported on March 8, 2023. On

December 23, 2025, Plaintiff received WBAT Decision No. 724 denying that request. Decision No. 724 confirms that IBRD lacks an effective procedure for receiving, evaluating, and resolving retaliation complaints and that no independent review mechanism exists for such complaints, in violation of Section 1504(7) of the IFI Act.

**RR.    Dec 2025: WBAT Application and Denial — Violates IFI Act § 1505(11)**

57.        WBAT Decision No. 724 is inconsistent with U.S. policy objectives under the IFI Act. The WBAT has repeatedly held that it lacks competence to adjudicate alleged IBRD breaches of the IFI Act, leaving Plaintiff without access to an independent adjudicative mechanism as required by Section 1505(11). Material misrepresentations made during the proceedings leading to Decision No. 724 prevented the appointment of an independent reviewer to investigate the retaliation complaint that Plaintiff reported on March 8, 2023. Consistent with Sections 1504 and 1505 of the IFI Act, Plaintiff respectfully requests that the Court direct the U.S. Treasury Secretary to instruct the U.S. Executive Director at IBRD to use the "voice and vote" to appoint an independent reviewer to investigate Plaintiff's March 8, 2023 retaliation complaint.

**SS.  2014 to 2024:  Ethics Unit Non-Investigation of Misconduct Exceeds $1 Billion**

58.        Over multiple years, the IBRD Ethics Unit declined to investigate multiple suspected misconduct complaints submitted by Plaintiff involving cumulative amounts exceeding $1 billion, contrary to Sections 1504(7) and 1505(8) of the IFI Act. Representative instances include:

(i) July–November 2014: Plaintiff reported an unauthorized budget allocation exceeding $120 million. On June 2, 2015, the Ethics Unit responded that the matter was "not within the jurisdiction of the Ethics Unit's investigative function."

(ii) May 2015: Plaintiff reported misrepresentation of the depreciation budget in the FY16 Budget Document arising from an Internal Audit approval to classify completed capital projects as work-in-progress due to the absence of a depreciation budget. The Ethics Unit again declined to investigate for lack of jurisdiction. Plaintiff subsequently worked with line management to ensure that more than $60 million in completed capital projects that were planned to be treated as work in progress were treated correctly as completed projects. On June 2, 2015, the Ethics Unit reiterated that the matter was outside its investigative jurisdiction.

(iii) April–May 2017: Plaintiff reported willful misrepresentation in the use of $150 million of scale-up capital reserves reflected in the FY11–FY14 Budget Documents. The Ethics Unit again declined to initiate an investigation.

(iv) January 2018: Plaintiff reported that key inputs to an IFI benchmark survey had been willfully misrepresented by IBRD and IFC, despite the Board's reliance on those benchmarks to inform budget allocations and efficiency targets. Plaintiff's submission showed that over-allocation above benchmark levels to a back-line unit cumulatively exceeded $500 million from 2014 onwards. The Ethics Unit referred the matter to Internal Audit, but no Internal Audit review was initiated.

(v) April 2024: Plaintiff reported a Code-of-Conduct violation by the Vice President of Budget and the Budget Director involving their review of willful misrepresentation of benchmark data presented to the Board and asserted that his placement on Opportunity-to-Improve (OTI) status constituted retaliation. The benchmark misrepresentation cumulatively exceeded $600 million. The Ethics Unit declined to investigate the Code-of-Conduct allegation and stated that OTI is a management performance tool, notwithstanding a subsequent PMR report confirming that Plaintiff had no performance issues.

**TT.    Summary of Retaliation, Harm, and Need for Punitive Deterrence**

59.         In 2023, after receiving guidance from staff in the office of a U.S. Congresswoman, Plaintiff reported retaliation and IBRD's violations of International and Federal Laws. Plaintiff informed IBRD of this outreach. Plaintiff was assured that the U.S. Government would support him if adverse consequences followed. Thereafter, Plaintiff suffered loss of employment, financial instability, reputational harm, and significant emotional distress due to a sustained pattern of retaliatory acts, including placement on OTI status, unsupported Fitness-for-Duty directives, restrictions on communications with oversight authorities, issuance of a termination notice, reliance on non-existent poor performance documentation, termination without due process, denial of any internal review mechanism, and repeated misrepresentations by management. These measures disrupted Plaintiff's career, damaged his professional standing, and caused prolonged emotional and financial injury. Plaintiff was ultimately forced to choose between upholding the law and facing termination; he chose to uphold the law, and IBRD terminated him as a direct consequence. Senior leadership—including the Senior Vice President of Legal, Ethics managers, and other senior officials—were informed of the significance of the IFI Act and of prior breaches. Rather than comply with the IFI Act, IBRD continued to violate it and asserted that the IFI Act was irrelevant. These actions demonstrate IBRD's willful, reckless, and malicious disregard of Plaintiff's due process rights and of the policy mandates imposed by the IFI Act, thereby supporting the imposition of punitive damages. By awarding suitable punitive damages, this Court would reinforce that the law of the land is supreme, consistent with Congressional mandates embodied in the IFI Act Pub. L. No. 95-118 requiring accountability, good governance, and effective safeguards against retaliation within International Financial Institutions. Such relief would further deter IBRD from engaging in similar misconduct and

would reflect this Court's inherent equitable authority to uphold Constitutional guarantees, enforce Congressional directives, and reaffirm the foundational principle that no entity— including International Organizations operating within the jurisdiction of the United States—is above the law.

# VI.    CLAIMS FOR RELIEF (COUNTS)

**COUNT I —  Breach of IFI Act § 1504(7): Failure to Establish and Maintain Effective Procedures for Receiving, Retaining, and Treating Misconduct Complaints**

60.              Plaintiff realleges all prior paragraphs. IBRD violated § 1504(7) of the IFI Act by failing to establish and maintain effective, reliable, and confidential procedures for the receipt, retention, and treatment of retaliation and misconduct complaints. IBRD failed to safeguard Plaintiff's confidentiality and anonymity when he reported misconduct; permitted line management to initiate adverse actions based on Plaintiff's protected follow-ups of his complaints; and IBRD lacked a functioning process capable of ensuring impartial handling of such complaints, as Congress mandated under § 1504(7).

**COUNT II — Failure to Maintain an Independent Ethics Unit in Violation of IFI Act § 1505(8): Lack of Independent, Impartial, and Effective Investigative Function**

61.              Plaintiff realleges all prior paragraphs. IBRD violated § 1505(8) of the IFI Act by failing to maintain an independent, impartial, and effective Ethics Unit capable of investigating misconduct and retaliation. The Ethics Unit permitted Plaintiff's line management to function simultaneously as accuser, reviewer, and decision-maker regarding false misconduct allegations; failed to investigate documented Code of Conduct violations by senior budget officials; and

refused to investigate Plaintiff's retaliation complaints. These failures demonstrate a systemic

breach of the IFI Act's mandate requiring an independent investigative mechanism.

## COUNT III —Retaliation for Protected Whistleblowing in Violation of IFI Act § 1505(11): Failure to Protect Whistleblowers and Prohibit Retaliatory Adverse Actions

62.          Plaintiff realleges all prior paragraphs. IBRD retaliated against Plaintiff in

violation of § 1505(11) of the IFI Act by misusing the OTI process, imposing gag restrictions,

directing coercive Fitness-for-Duty assessments, and initiating termination based on Plaintiff's

protected disclosures. IBRD further failed to implement best-practice whistleblower safeguards,

denied Plaintiff even the most basic legal burden-of-proof protections in retaliation proceedings,

and provided no access to an independent adjudicative body capable of reviewing violations of

the IFI Act. These failures collectively demonstrate a willful disregard of Congress's mandate to

protect whistleblowers from retaliation.

## COUNT IV —Tortious Misrepresentation, Deceit, and Obstruction Under the Foreign Sovereign Immunities Act (FSIA) Non-Commercial Tort Exception § 1605(a)(5): Willful Misconduct Occurring in the United States

63.          Plaintiff realleges all prior paragraphs. IBRD management committed tortious

acts within the United States by engaging in willful misrepresentation, deceit, and obstruction,

including providing false and misleading information to IBRD Board members and the U.S.

Executive Director; submitting knowingly inaccurate, incomplete, and deceptive representations

to the WBAT to defeat jurisdiction; and disseminating fabricated performance-related allegations

to justify adverse actions against Plaintiff. These intentional acts constitute willful, reckless, and

malicious misconduct and satisfy the FSIA's non-commercial tort exception.

**COUNT V  —  Denial of Due Process and Failure to Provide Any Judicial Mechanism to Adjudicate IFI Act Violations in Violation of the Fifth Amendment**

64.         Plaintiff realleges all prior paragraphs. IBRD's refusal to provide any internal judicial or adjudicatory mechanism capable of reviewing or remedying IBRD's violations of the IFI Act—and its refusal to disclose the written records used to justify Plaintiff's termination—deprived Plaintiff of fundamental due-process protections guaranteed by the Fifth Amendment. By denying Plaintiff access to a neutral forum, withholding material evidence, and preventing Plaintiff from contesting the asserted grounds for his termination, IBRD violated core constitutional due-process requirements.

**COUNT VI — Retaliation for Protected Petitioning and Oversight-Related Communications in Violation of the First Amendment**

65.          Plaintiff realleges all prior paragraphs. IBRD imposed restrictions on Plaintiff's protected communications with oversight authorities—including the U.S. Executive Director and Members of the U.S. Congress—and retaliated against him for engaging in lawful petitioning activity fully consistent with IBRD Staff Rules. By restricting and penalizing Plaintiff's efforts to report misconduct to entities charged with oversight responsibility, IBRD infringed on his First Amendment right to petition the government for redress of grievances.

**COUNT VII ——Emotional and Reputational Harm Resulting from Retaliatory Conduct (Federal Common-Law Tort; FSIA Non-Commercial Tort Exception § 1605(a)(5))**

66.         Plaintiff realleges all prior paragraphs. IBRD's coercive Fitness-for-Duty directives, misuse of Staff Rules related to OTI, failure to assign a reviewer to investigate retaliation, continued breach of the IFI Act, and dissemination of false statements caused Plaintiff severe emotional distress, reputational damage, and professional harm. These retaliatory

actions escalated in severity, intensified the psychological pressure on Plaintiff, and culminated in his unlawful termination, thereby compounding his injuries. As a result, Plaintiff suffered compensable emotional and reputational harm actionable under federal common-law tort principles and the FSIA's non-commercial tort exception.

## COUNT VIII —Retaliation and Adverse Employment Actions in Violation of the Sarbanes–Oxley Act § 806

67.        Plaintiff realleges all prior paragraphs. Plaintiff engaged in protected activity under § 806 of the SOX Act by reporting IBRD's noncompliance with U.S. laws, breaches of internal control requirements, and failures to adhere to statutory obligations to a Member of Congress, the U.S. Executive Director, and other oversight authorities. In direct response, IBRD undertook a series of retaliatory actions, including imposing gag restrictions, issuing retaliatory OTI measures, directing baseless Fitness-for-Duty assessments, disclosing Plaintiff's whistleblower identity to individuals involved in adverse personnel actions, and ultimately terminating Plaintiff for making protected disclosures. Each of these actions constitutes unlawful retaliation and prohibited adverse employment conduct under § 806 of the Sarbanes–Oxley Act.

## COUNT IX — Coercive, Punitive, and Disproportionate Treatment in Violation of the Eighth Amendment's Prohibition on Cruel and Unusual Punishment

68.        Plaintiff realleges all prior paragraphs. Plaintiff was subjected to a sustained pattern of coercive and punitive Fitness-for-Duty directives grounded in the knowingly false assertion that his March 8, 2023 retaliation complaint had already been adjudicated—when no such adjudication ever occurred. These directives, issued without medical justification and accompanied by threats of termination, procedural manipulation, and retaliatory restrictions,

were designed to inflict escalating psychological pressure and to coerce Plaintiff into abandoning his protected disclosures. The cumulative effect of these measures was disproportionate, punitive, degrading, analogous to the excessive and coercive conduct prohibited by the Eighth Amendment. Plaintiff was ultimately forced to choose between upholding the law and preserving his employment; he chose to uphold the law, and IBRD terminated him in direct retaliation.

## COUNT X — Failure to Maintain Independent Internal Audit Unit

69.        Plaintiff realleges and incorporates by reference all prior paragraphs. IBRD failed to maintain an independent Internal Audit Unit, as required by Section 1505(8) of the IFI Act.

## COUNT XI — Failure to Amend World Bank Administrative Tribunal (WBAT) Rules

70.        Plaintiff realleges and incorporates by reference all prior paragraphs. IBRD failed to amend the WBAT Rules to override WBAT Decisions 586 and 606 and to establish procedures that allow for the confidential and anonymous reporting, investigation, and independent review of complaints concerning questionable accounting practices. Under the current framework, complaints reported by Plaintiff were not investigated, the Ethics Unit declined jurisdiction, and no mechanism existed to provide independent review. These deficiencies are inconsistent with, and in violation of SOX Act and applicable SEC regulations.

# VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and grant the following relief:

1. **Declaratory Relief** — A declaration that IBRD violated Plaintiff's rights under the IFI Act §§ 1504(7), 1505(8), and 1505(11); the U.S. Constitution (First, Fifth, and Eighth Amendments); the Sarbanes–Oxley Act; the Bretton Woods Agreement Act; SEC Rules and federal common-law tort principles

2. **Injunctive Relief** — An order requiring IBRD to: (a) Establish and maintain effective mechanisms for receiving, reviewing, and adjudicating complaints as required by the IFI Act; (b) Restore Plaintiff's employment status; (c) Remove from Plaintiff's personnel file all adverse material generated in violation of due process and federal law; (d) Implement structural reforms ensuring independence of investigative functions, consistent with Congressional mandates in the IFI Act Pub. L. No. 95-118; (e) establish procedures that allow for the confidential and anonymous reporting, investigation, and independent review of complaints concerning questionable accounting practices in a manner that complies with SEC regulations; and (f) amend the WBAT Rules to override WBAT Decisions 586 and 606 and ensure WBAT direct the Ethics Unit to investigate complaints regarding questionable accounting practices when the Ethics Unit declines to do so.

3. **Compensatory Damages** — Compensation for lost wages, lost career advancement, reputational harm, emotional distress, and other pecuniary and non-pecuniary losses caused by IBRD's unlawful conduct.

4. **Punitive Damages** — An award of punitive damages sufficient to deter future willful, reckless, and malicious disregard by IBRD of staff due-process rights guaranteed under the IFI Act and the U.S. Constitution, and to reaffirm that the law of the land is supreme and applies to International Organizations operating within the United States.

5. **Costs and Fees** — An award of reasonable attorney's fees, expert fees, and costs, as permitted by law.

6. **Such Other and Further Relief** — Any additional relief the Court deems just, proper, and consistent with its inherent equitable authority to enforce Congressional policy directives and uphold constitutional guarantees.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

**Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Dated: January 6, 2026                                        Respectfully Submitted,

*/s/ Thiagarajan Ponnoussamy*

THIAGARAJAN PONNOUSSAMY
Plaintiff, Pro Se
4202 Pinefield Ct,
Fairfax VA 22033
justiceforthiaga@gmail.com
Ph: 571-316-0490